NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDREW G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.G., *Appellees*.

No. 1 CA-JV 15-0341
FILED 5-5-2016

Appeal from the Superior Court in Maricopa County
No. JD508120
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**C A T T A N I**, Judge:

**¶1**        Andrew G. ("Father") appeals the superior court's termination of his parental rights to S.G.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        S.G. was born in June 2004 while Father was in prison.  Father saw S.G. once between his release in 2008 and his return to incarceration in 2010.  Father testified that he interacted with S.G.'s mother ("Mother") for a short time during that period, but stopped doing so due to Mother's substance abuse problems.[1]  Father claimed that he filed a civil suit in 2008 seeking custody of S.G., but that he was unsuccessful because he lacked adequate information about S.G.

**¶3**        Father was arrested in January 2010 on three felony charges, and he has remained incarcerated since that time.  He was convicted of all three felonies, and he was sentenced to 10-years' imprisonment.

**¶4**        The Department of Child Safety ("DCS") took S.G. into care in March 2013.  Although Father was in jail in Maricopa County, DCS did not locate him until early 2015, at which point S.G. had been a dependent child for more than a year.  Father testified that he sent S.G. two letters and three postcards after learning of the dependency, but the DCS case manager disputed that assertion.  DCS did not initiate visitation between Father and S.G. because a psychologist recommended against it.

**¶5**        S.G., who was 11 years old at the time of the severance adjudication, did not remember ever having a relationship with Father, even during the period that Father was out of prison.  S.G.'s long-time, potentially-adoptive familial placement likewise indicated she was unaware of any contact between Father and S.G.

---

[1]        Mother's parental rights have been terminated, and she is not a party to this appeal.

¶6        After the adjudication, the superior court terminated Father's parental rights on the basis that his felony incarceration would deprive S.G. of a normal home for a period of years, and that severance would be in S.G.'s best interests. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(4).[2]  Father timely appealed the court's ruling, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶7        Father challenges the superior court's finding that the length of his felony sentence constituted grounds for severance; he does not challenge the court's best interests determination.

¶8        The superior court may terminate the parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance, and a preponderance of the evidence shows severance to be in the child's best interests.  A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  We review the court's severance ruling for an abuse of discretion, deferring to the court's credibility determinations and factual findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶9        The statutory ground of severance due to length of felony sentence requires proof that an incarcerated parent's felony sentence "is of such length that the child will be deprived of a normal home for a period of years."  A.R.S. § 8-533(B)(4).  The length of a parent's sentence is not dispositive by itself. *Jesus M.*, 203 Ariz. at 281, ¶ 9.  Instead, all relevant circumstances must be considered, including several factors set forth by the Arizona Supreme Court in *Michael J. v. Arizona Department of Economic Security*, 196 Ariz. 246, 251–52, ¶ 29 (2000):

> (1) the length and strength of any parent–child relationship existing when incarceration begins, (2) the degree to which the parent–child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to

---

[2]        Absent material revisions after the relevant date, we cite a statute's current version.

provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

¶10 Here, by the time of severance, 11-year-old S.G. had lived without Father for approximately 10 years, and Father still had several more years remaining on his prison sentence. Father had minimal contact with S.G., and S.G. indicated that he did not have a relationship with Father. While incarcerated, Father did not seek to foster a relationship with S.G. and, even after learning of the dependency, Father made little effort to communicate with him. S.G. had no other parent who could provide a normal home during Father's incarceration because Mother's parental rights had been severed. Thus, given the absence of a meaningful parent–child relationship between Father and S.G., the superior court did not err by concluding that the *Michael J.* factors supported severance.

¶11 Father argues that DCS failed to make reasonable efforts to locate him and that, had DCS contacted him at the time of the dependency determination in 2013, he would have used that time to develop a relationship with S.G. But the record reflects that, although unsuccessful, DCS conducted a diligent record search attempting to find Father. Moreover, Father did not have an ongoing relationship with S.G. before DCS's involvement, and even after learning of the dependency, Father made at most minimal efforts to foster a relationship with him. Accordingly, and in light of the superior court's finding that severance was in S.G.'s best interests, the superior court did not err by severing Father's parental rights on the basis of his lengthy felony sentence.

**CONCLUSION**

¶12 For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama